UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>SMITH, RADEMAKER, AND W. JEFFERS,<br><br>Defendants. | CAUSE NO. 3:26-CV-953-JD-JEM |

OPINION AND ORDER

Timothy Jackson, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Jackson alleges that, on March 10, 2026, around 11:00 a.m., sewage began to back up in his cell. He told an officer and asked him to let a sergeant know and get a maintenance worker to address the problem. Every time inmates in neighboring cells flushed their toilets, it would push more sewage into Jackson's cell.

By the time the officer Jackson spoke to came back to pass out chow, there was so much sewage that it was flowing out of Jackson's cell and into another cell. Jackson stopped the officer, who was with Officer Green, and asked what the sergeant said. They said they told the sergeant but didn't know anything else about maintenance coming to fix the problem.

Jackson and his cellmate banged on the window of their cell to try to get an officer's attention. Their window broke because of this. Sgt. Rademaker was sitting at his desk in the bubble but ignored them.

Around 4:45 p.m. the officers were distributing Ramadan meals. When the officers saw the broken window, they called a signal. Jackson and his cellmate were placed in cuffs and removed from the cell to be put on strip cell status.

The officers removed everything from the cell except mattresses and blankets. The officers made clear that they intended to send Jackson and his cellmate back into his cell without letting him shower and without cleaning the cell, which now had broken glass in it in addition to sewage. They planned to send them back wearing only shower shoes, boxers, and t-shirts.

Jackson asked why maintenance did not come and why he must act out to get attention. Around 6:25 p.m., on the ¾ side of PHU, the officers were taking Jackson back into the cell with the broken glass and sewage. As they were leading Jackson back to his cell, Jackson kicked Sgt. Rademaker. There were six officers present. Jackson's hands were still cuffed behind his back. Officer W. Jeffers picked Jackson up from behind and slammed him on his head and neck, resulting in a broken clavicle.

The Eighth Amendment prohibits cruel and unusual punishment—including the application of excessive force—against prisoners convicted of crimes. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quotations and citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell*, 933 F.3d at 663 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Prisons are dangerous places, and security officials are tasked with the difficult job of preserving order and discipline among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id.* at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance — especially in situations where officers or other inmates are faced with threats, disruption, or aggression — the use of summary physical force can be warranted. *Id.* at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). That is not to say, however, that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Several factors are explored when determining whether an officer's use of force was malicious or legitimate, including the need for applying the force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the prisoner's injury. *Hendrickson*, 589 F.3d at 890.

Here, the court must accept Jackson's allegations regarding being in handcuffs and surrounded by six officers as true. *See, e.g., Lewis*, 581 F.3d at 477. Although further investigation may reveal the force used was legitimate under the circumstances, at this preliminary stage the court must give Jackson the benefit of the inferences to which he is entitled and presume the force exceeded the bounds of the Constitution. Accordingly, he has stated a plausible Eighth Amendment excessive force claim against W. Jeffers.

Jackson is also suing Sgt. Rademaker for knowingly and unnecessarily leaving him in a cell with sewage for at least six hours. "Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotation marks and citation omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). They must also be provided with "'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must

have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

It is undisputed that prisoners cannot be held in "shockingly unsanitary cells." *Taylor v. Riojas*, 592 U.S. 7, 7–8 (2020) (prisoner held in deplorable conditions with feces and raw sewage everywhere for "six full days"); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases establishing that holding inmates in a feces and blood covered cell without a working sink or toilet for anywhere from thirty-six hours to six days was inhumane). "Causing a man to live, eat and perhaps sleep in close confines with […] human waste is too debasing and degrading to be permitted." *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972). *See also Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019) (citing approvingly of *LaReau*). However, both duration and mitigation play a part in the Eighth Amendment analysis. *See, e.g., Taylor*, 592 U.S. at 7–10 (case remanded to determine whether conditions were "compelled by necessity or exigency" and whether they could have been "mitigated, either in degree or duration"); *Johnson*, 29 F.4th at 904 ("frequency, severity, [and] duration of the unsanitary cell conditions" must be considered); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[T]he duration of the condition . . . determines whether the conditions of confinement are unconstitutional."); *Stephens v. Cottey*, 145 Fed. Appx. 179, 181 (7th Cir. 2005) ("As is the case under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one.") (collecting cases)).

Jackson alleges that he was held in shockingly unsanitary conditions, but these conditions lasted only approximately six hours. The court has some doubt that being

subjected to these conditions for around six hours violates the Eighth Amendment. However, at this early stage of the case, and giving Jackson the benefit of all plausible inferences, the court will allow him to proceed against Sgt. Rademaker for subjecting him to unconstitutional conditions of confinement on March 10, 2026, by unnecessarily leaving him in a cell flooded with sewage for more than six hours.

Finally, Jackson is suing Warden Smith because he oversees the Miami Correctional Facility. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008). There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. A supervisor can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Because Jackson has not alleged facts showing that Warden Smith was personally involved in the events that occurred on March 10, 2026, he has not stated a claim against him.

For these reasons, the court:

(1) GRANTS Timothy Jackson leave to proceed against W. Jeffers in his individual capacity for compensatory and punitive damages for using excessive force against Jackson on March 10, 2026, resulting in a broken clavicle, in violation of the Eighth Amendment;

(2) GRANTS Timothy Jackson leave to proceed against Sgt. Rademaker in his individual capacity for compensatory and punitive damages for subjecting him to unconstitutional conditions of confinement on March 10, 2026, by unnecessarily leaving him in a cell flooded with sewage for more than six hours, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Warden Smith;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) W. Jeffers and Sgt. Rademaker at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), W. Jeffers and Sgt. Rademaker to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 9, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT